```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION

THOMAS J. GWIN,                    }
                                   }
     Plaintiff,                    }
                                   }       CIVIL ACTION NO.
v.                                 }       10-AR-0227-S
                                   }
BFI WASTE SERVICES, LLC d/b/a      }
ALLIED WASTE SERVICES OF           }
BIRMINGHAM,                        }
                                   }
     Defendant.
```

## MEMORANDUM OPINION

Before the court is the motion (Doc. 28) of defendant, BFI Waste Services, LLC d/b/a Allied Waste Services of Birmingham ("BFI"), for summary judgment. Plaintiff, Thomas J. Gwin ("Gwin"), filed a responsive brief (Doc. 31), and BFI replied (Doc. 33). Gwin, who is white and a former employee of BFI, brought this race discrimination claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. It is, of course, understood that, under Rule 56 consideration, the evidence is construed in favor of the non-movant, Gwin. If it were not for the requirement of Rule 56(a) that the reasons for denying a Rule 56 motion should be stated in the record, this Rule 56 motion would be denied without comment. As it is, for the reasons that follow, BFI's motion for summary judgment will be denied.

## FACTS

BFI is in the business of solid waste collection and disposal. Gwin was hired by BFI as a garbage truck driver in Birmingham,

Alabama in January 1983.  He was discharged in June 2009, at which time he was working "swing" shifts, completing the routes of drivers who were absent.  BFI had a policy against the use of racist language, of which Gwin was familiar.  A precise description or definition of what would be considered sanctionable racist conduct was never furnished Gwin.  The record does not reflect that Gwin received any previous discipline for racist remarks or for any other work related offense during the twenty-six years of his employment.  From his personnel record he appears to have been an exemplary employee.

The "Corrective Action Form" used in the firing of Gwin was not a BFI form.  It was a form used by Allied Waste Industries, Inc., which apparently has some undefined affiliation with BFI, but was not the employer of Gwin.  The provision in the form calling for disciplinary action for certain violations  provided for **progressive** discipline.  It said: "However, the Company [what company?] recognizes there are certain offenses [stories told in which a racially offensive word is used by one of the characters?] that, if committed by an employee, are serious enough to justify discharge...."  There followed on the form, a provision entitled "**Background Information: List specific facts, address concerns, possible causes, witnesses, previous discussions, and other pertinent information.**" (emphasis added).  The only finding set forth on the form by some unnamed employee in response to this

requirement was:

> "It has come to our attention that you used a racial slur that was overheard by another individual in the workplace. This type of behavior is in violation of our Harassment Policy and caused an unwelcomed event in the workplace; Therefore your employment is terminated effective immediately."

Not any of the long list of items of sanctionable conduct was checked on the form, and there was no mention of "witnesses" or of "possible causes" or of "previous discussions."

On June 17, 2009, Gwin was listening to co-worker, Steven Bradberry ("Bradberry"), who is white, recount an incident involving two black former employees who engaged in a fight, during which one of them referred to the other as a "fucking nigger" ("N-word"). Two other BFI employees, William Strickland ("Strickland"), who is white, and Shepherd Johnson("Johnson"), who is black, were present while Bradberry was telling the story. Gwin, recognizing from Johnson's reaction that he was offended by the use of the N-word in the story, responded, "whoa, whoa, wait a minute. There's four adult men standing here ... And him [Bradberry] using the word 'nigger' in that [context] of quoting a black man is perfectly okay." (Doc 28-1, at p. 13; Pl. Depo. pp. 42-45). Gwin is not a trained grammarian, nor a mind reader, nor has he ever been trained in making nice distinctions between telling an off-color story and an intentional, well aimed racial slur.

Johnson filed a complaint with his supervisor, Samuel Freeman

("Freeman"), regarding the incident, and Freeman forwarded the complaint to Ronda McNeely ("McNeely") who was the Division Human Resources Manager for Northern Alabama, which included BFI's Birmingham office. McNeely and Eric Colb ("Colb"), General Manager of the Birmingham facility, investigated the claim, including interviews of Gwin, Bradberry, Strickland, and Johnson, and made a discharge recommendation to Terri Boatman ("Boatman"), Area Human Resources Manager. Gwin was fired on June 23, 2009 for allegedly violating BFI's anti-harassment policy. He was given no other reason.

## DISCUSSION

In order to establish a *prima facie* case of race-based disparate treatment, Gwin must demonstrate (1) that he is a member of a protected class, (2) that he was qualified to perform his job, (3) that he was subjected to an adverse employment action, and (4) that there is evidence to create an inference of racial motive. *Knight v. Baptist Hosp. of Miami*, 330 F.3d 1313, 1316 (11th Cir. 2003). A common method of establishing the fourth prong of a *prima facie* case is by demonstrating that a similarly situated employee outside of the protected class was treated more favorably. If Gwin satisfies these elements, then BFI must show a legitimate, non-discriminatory reason for its adverse employment action. *See Burke-Fowler v. Orange County Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). If BFI does so, Gwin must then prove that the reason proffered by

BFI is a pretext for unlawful discrimination. *See id*. The first three elements are not contested by BFI, and thus are not at issue. BFI argues that Gwin cannot establish a *prima facie* case because he cannot identify a similarly situated employee from a different protected class who was treated more favorably.

To determine whether employees are similarly situated for purposes of Title VII, the court evaluates "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler*, 447 F.3d at 1323 (citing *Manicca v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). When making this determination, "[the court] require[s] the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id*. There can of course, alternatively, be a *prima facie* case by the totality of circumstances or by revealing statements or acts by supervisory employees.

BFI says that Gwin has not presented evidence of any other employee outside of his protected class who engaged in similar conduct and was not terminated, and that he has failed to show that BFI's stated reason for firing him was pretextual. BFI claims that Gwin violated the following policy (Policy No. G-126 "Sexual and Other Harassment", revised April 21, 2004):

<u>POLICY</u>

> Consistent with the Company's commitment to provide employees with a rewarding job experience, and in compliance with various laws the Company will not tolerate **harassment** against any employee based on the employee's **race**, religion, color, national origin, gender, sexual orientation, age, disability, veteran status or any other classification protected by law. Employees who violate this policy will be disciplined and may be held personally liable for any injury suffered by another employee as a result of such conduct.
>
> Under the law, harassment occurs when conduct meets certain specific criteria. However, **this policy is intended to prohibit all conduct directed at an employee because of race**, religion, color, national origin, gender, sexual orientation, age, disability, veteran status or any other classification protected by law, even if the law does not prohibit the conduct. This includes conduct or comments that a person would reasonably find offensive. Therefore, jokes or comments about a person's race, religion, color, national origin, gender, sexual orientation, age, disability, veteran status or any other classification protected by law will not be tolerated. Accordingly, the Company may discipline employees who violate this policy even if the employees' conduct does not violate the law.
>
> Non-Retaliation Statement
>
> After a review is conducted, any employee who is determined to have violated this policy will be subject to disciplinary action, including **in appropriate circumstances** termination of employment....
>
> (emphasis added)

Gwin contends that he was terminated after he repeated the N-word used in Bradberry's narrative, which Gwin admits but argues did not constitute **harassment** or a **racial slur**, was never intended to offend, and was not directed at any particular person, black or white.  Trying to explain why Bradberry's arguably offensive narrative was not offensive is not the same as having initiated the

offensive story, something that places Gwin in quite a different category from Bradberry.

Gwin presents evidence that a classic racial slur was uttered by a black man at BFI's workplace and did not result in his termination.  The day after the election of President Obama, Sherman James[1] ("James"), a black man, held up a photo of the new president and stated in the workplace for all to hear, "Take this, you white motherfucker". (Doc. 32, Ex. 6, affidavit of Steven Bradberry).  BFI's human resources department was notified of James' racial slur, and McNeely conducted an investigation of the incident.  James was not terminated.  Instead, he was suspended for three (3) days without pay and then reimbursed for the time off.  Upon James' return to work, he was given a verbal warning, and he signed a Letter of Mutual Respect, acknowledging BFI's expectations concerning the treatment of, and respect due fellow employees. Was this the "previous discussion" and the "progressive discipline" called for, or did it create "appropriate circumstances" for a termination?  Gwin was not given a warning or lesser discipline or an opportunity to explain why his conduct did not call for termination.  Gwin persuasively argues that he was not "directing" his language at any particular person, black or white.  Instead, he contends that he was simply explaining in context what might otherwise be thought to be offensive.  Despite the similarities

---

[1] Steven Bradberry's affidavit incorrectly states that the speaker was Shepard Johnson.

between Gwin's and James' conduct, BFI fired Gwin, the white employee, while only suspending James for three days (with pay).[2] James' conduct was arguably more egregious than Gwin's. This arguably disparate treatment raises an inference of BFI's intent to discipline a white employee more harshly than a black employee for the same or substantially similar conduct. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1343 (11th Cir. 2011); *see e.g.*, *Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts.").

Because Gwin admitted to repeating the N-word, regardless of context, BFI insists that he violated the company's anti-harassment policy. At least he told the truth, which was not treated by BFI as a mitigating factor. The alleged violation was the only basis given for Gwin's termination. Was there a basis for this event to be considered not or constitute the "appropriate circumstances" for a dismissal? The record evidence would permit a jury reasonably to conclude that BFI's articulated justification for firing Gwin was a pretext for a discriminatory motive, namely, to lump Gwin with

---

[2]As to James' conduct, BFI alleges they investigated the incident but could not "confirm" whether James called Bradberry a "white motherfucker." The distinction made by BFI is that only one person alleged that James used a racial slur, while Gwin's use of the racial slur was confirmed by all other employees present, and he admitted saying it. A jury may or may not believe Bradberry. Apparently BFI did.

Bradberry, who was fired at the same time as Gwin. Was this a public relations decision? *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1341 (11th Cir. 2011). There is, of course, an obvious real distinction between what Bradberry said and what Gwin said. A jury will have to decide whether Gwin "directed" his speech towards Johnson, and whether his use of the N-word was innocuous and/or innocent, and whether Gwin so egregiously violated BFI's anti-harassment policy that it constituted an offense not subject to any lesser punishment than termination.

"[N]o matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). The foregoing evidence, considered in the light most favorable to Gwin, precludes summary judgment for BFI. A jury could reasonably conclude that BFI fired Gwin because he is white, linking him unjustifiably with Bradberry, who is also white, but whose conduct was different from that of Gwin. This is not to suggest that Bradberry's conduct and his subsequent termination should be matters for a Title VII resolution. Any possible difference of opinion between BFI and

Bradberry is not before this court.  However, BFI's use of the words "appropriate circumstances" in its warning about termination for harrassing conduct necessarily implies that there can be circumstances that do not call for termination, so that a jury could find that Gwin's termination was **not appropriate**, or was disproportionate, especially when words "white mother fucker" by a black employee resulted in lesser discipline.  In other words, BFI did not have zero tolerance for racially offensive remarks.

BFI's motion for summary judgment will be denied by separate order.

DONE this 14th day of October, 2011.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE